First case we'll hear is United States v. George and Mr. Martin. You're ready? Good morning and may it please the court. James Martin for Mr. DeCarlos George. Under DeNovo review, this court should conclude that the pat-down search of Mr. George's body violated the Fourth Amendment because the searching officer lacked reasonable suspicion to believe that Mr. George was both armed and dangerous immediately before the frisk. Now reasonable suspicion must be supported by objective facts available to the law enforcement officer immediately prior to beginning the frisk. In this case, Officer Roehrig, his subjective thoughts, his fears are simply not relevant and were never relevant to this process and this is a very fact-bound case. Throughout Mr. George's suppression hearing, the trial court- Being a fact-bound case gives you somewhat of an elevated standard of review to overcome. I would hope it would, Your Honor, definitely. You mean with regards to the facts? I think his question is it imposes a higher burden on you because the court made factual findings and if you accept those facts, then we review at DeNovo, but if you want to challenge those fact findings, we have to find clear error. I think probably the most critical factual is after the vehicle was stopped, the orders to put the hand up and keeping the right hand on the side of the leg and then the dropping of the ... getting out of the car with the bending down. All that is what was found against your client and was disputed. Yes, Your Honor. Absolutely. We did not dispute the stop. What's interesting about the alleged failure from my client to put his hands up, all the relevant objective facts take place within approximately a 13 second window where Mr. Officer Roehrig approaches the vehicle. It's a very short window of time and mainly because there was no sound being monitored, no sound being recorded at that time and that was- Are you challenging the facts or- Yes, Your Honor. Well, you have two versions and the judge found the officer credible. Yes, Your Honor. What's the basis for saying that the judge didn't have sufficient evidence to make that finding? Yes, Your Honor. We find that ... we assert that that finding was clearly erroneous because if you examine the video and if you also take into account Mr. George's testimony that the court clearly erred in finding that facts. Even if you do find, Your Honor, even if you do adopt the finding of the district court, the mere fact that he delayed for a second or two to put one hand up- Yes, but that differential is really what creates the heightened concern, risk. He puts up one hand and he keeps the other hand on his thigh where the gun turns out to be. Yes, Your Honor. And there were three or four orders, get your hands up, get your hands up and he finally puts it up. And then when he gets out of the car, he bends over. He can ask him to get out of the car under Wilson. So the question now, is he entitled to frisk? And I must say an objective view of an officer in that circumstance at 3.30 in the morning in an area where your own client said it was a drug-related area, it seems to me that you have a pretty hard case. It might appear to be problematic, but what clears it up, Your Honor, is as soon as Officer Roehrig steps up to the car and he views the inside of the car and supposedly says, put up your hands, put up your hands, put up your hands, he is not bothered. He is not ridden with anxiety. And that is clearly shown in the video because what he does next is he holsters his service weapon and he relaxes- We also see in the video the appearance of several other police officers at that point in time. Yes, Your Honor. Those were called- Wouldn't that justify the judge in reaching the conclusion and considering your argument that the presence of these other armed officers was sufficient for him to do that so he could extract the gentleman from the car? I don't think the mere presence of those officers is necessarily probative of reasonable suspicion, Your Honor. First of all, that call was made before the stop was made. That's not the point. The point is you had argued that the holstering of the officer's weapon was significant in and of itself. That's different from the articulable suspicion because of the presence of these other officers is the reason he holstered his weapon. That's an interesting argument, but again, if- Well, it's not an argument. I'm saying isn't that a legitimate inference that the judge- Yes, Your Honor. It is a legitimate inference. But again, I think if you look at the totality of the circumstances at the moment he holsters his firearm, if you look at the video and look at his body demeanor, his physical stature, you see that there is no physical signs of anxiety or worry about him at that time. Well, I'm going to tell you, Your Honor. Excuse me. You have addressed what transpired before the stop. The activities at this car. They were following another car, and then they realized that the police car was behind them. They slowed down. They made several evasive turns to see if that car was following them. And as Judge Nima pointed out, it was 3.30 in the morning in a high crime area. And I think what you focused on the right thing, that you've got to get over whether an objective, reasonable, and articulable suspicion that criminal activity was afoot. And if that is found, then a Terry Frisk was justified in searching for the weapon. Yes, Your Honor. But we do assert that the facts that the court is relying upon are basically innocuous facts. The fact of the... Why do you think that's innocuous? It's what I described that the car was doing in that high crime area? Well, for example, Your Honor, when I think just in our practical experience, when a driver who was, in this case, there was no evidence that any of the drivers were exceeding the slow down. And they immediately, everyone does that. That's just a very natural innocuous reaction. I thought the officer testified that your client's vehicle was chasing the one in front of them and they ran through a red light. That was clearly unsupported by the facts, Your Honor. They, the two cars were following closely. Well, that's what the officer testified to. And he did. And the trial judge gave credibility to that testimony. Yes, Your Honor, we did. But we're saying that under the, if you look at the totality of the facts in the record, that's clearly erroneous. There's no way that the officer could have found that this was some type of a, some type of a chase between two vehicles when they never broke the speed limit. They were following each other very closely, 20 to 25 miles an hour, through the turns and screeching tires? Absolutely. That did happen. That did happen. Why, he's, what's going through his mind is gang activity, hostile activity. He asked about all these things. Yes, Your Honor. And he's concerned about what's going on here at 3.30 in the morning in this high crime area with these two cars chasing. But, Your Honor, he looked into the vehicle and he saw absolutely nothing that gave him any indications of gang activity. What do you mean it's gang activity? What do you think? If you're an officer, we're talking about a pat down, which the Supreme Court has recognized is a minimal intrusion. It's a very minimal intrusion. He's not being arrested for that. He's just being patted down to allay the officer's concern about safety. And the question is, isn't it an objective officer reasonable in being concerned about his own safety based on the conduct we're talking about? Yes, Your Honor. A reasonable officer should be concerned about his safety at all times. And I do not disagree with the assertion that officers need to be able to pat down anyone that they're interacting with in order to guard their safety. However, we are arguing that, look, you can go ahead and pat them down, but if you don't have reasonable suspicion to believe that person is presently armed and dangerous, then whatever evidence of a crime you find, whatever statements are found, have to be suppressed. We have no objection to the pat down process itself. We're just trying to suppress evidence. Well, you have to object to it, because if you don't object to it, then the product of a legitimate pat down is... Your argument has to be that the pat down was illegal. Yes, Your Honor, legally. But in the real world sense, officers will pat down someone any time that they feel threatened or they feel uneasy. And again, we don't want them... It makes no sense for them to stop necessarily patting people down, though we would like them to be able to, in every single case, say, okay, I don't have reasonable suspicion here, so I should not put my arms or my hands on this suspect or on this citizen. But again, if they do feel that they need to pat someone down, well, that's fine. It's not fine, but again, the evidence of a crime from any of these illegal pat downs need to be suppressed. I'm just trying to make it clear that I don't think an officer should risk his or her personal safety, that they should be killed or injured in the line of duty just because they're not sure how to interpret the Fourth Amendment of the United States. But I think, again, this is a very tough, difficult, factual question that we're all wrestling with here today. Okay. I think we understand the argument. It's a fairly narrow argument, and we'll look at that. All right. Mr. McKinney, Watford McKinney. Ms. Watford McKinney. You go by both. You use both names. Yes. Good morning. As you just stated, my name is Yvonne Watford McKinney. I represent the United States. And, Your Honor, this morning I'd like to state that the district court was not clearly erroneous in making the findings that there was reasonable suspicion to Terry Frisk, the defendant. The court looked at several things, heard testimony both from the agent who was on the scene and from the defendant. The court recognized early on that this was a dangerous situation that the officer found himself in. The court has already mentioned, it's 3.30 in the morning, on a weekend, scant if any traffic, sees these two cars. One is aggressively pursuing the other. The officer saw this because he was driving right behind the vehicle in which the defendant was a passenger. When the cars ran through the red light at what the officer believed was a high rate of speed, 20-24 miles an hour in front of him. They continued on with the second car driving quickly behind the other one. The officer indicated that when he stopped, when he actually determined that he was going to call in and make the stop, that the vehicle in which the defendant was driving was going as fast as 45 miles per hour. Slowed to about 25 when the occupants noticed that the officer was following them. The officer had a decision to make. This is a very dangerous situation. He was afraid for his safety. He noticed that there were at least four people in the vehicle. He did call for backup. When he stopped the car, car pulled over into the service station parking lot, he did proceed with caution. He had his window until he was able to get the defendant to take his right hand and place it along with his left hand on the headrest of the driver's seat. It took four or five times of him asking the defendant to do this before the defendant complied. At the same time, the defendant would not look at him. The defendant did not speak to him at all. Those also are natural nature going on. The officer spoke with the driver at that point. Once he was assured that there was nothing in the defendant's right hand, but he did not ever turn his back to the passengers in that vehicle. Spoke to the driver, driver denied that he had run the red light, denied the aggressive pursuit, and by the defendant's own testimony, we know that the three occupants of the vehicle began to persist in the driver's statement that they had done nothing wrong, that they had not been aggressively pursuing anyone. The officer was entitled to attribute the driver's denial of what had occurred to the defendant, and we know that because under United States v. Psaki, this court has stated that even if the passenger's conduct is not suspicious, the passenger can be attributed the conduct of the driver in making those false statements. So the court looked at that too. Certainly the time of day, the aggressive pursuit, the defendant's demeanor, his refusal to comply, and then when he gets out of the vehicle, he drops the telephone and a wallet on the floor. The officer stated, well now he's in the V of the door, and if he wanted to escape, he would be able to. All of these things raise reasonable suspicion that this defendant might be armed and dangerous. I don't want to also neglect to say that as the defendant got out of the vehicle, he adjusted his pants, and if the court saw the video, you would notice that the defendant's pants were baggy. He was wearing baggy clothes. Certainly could have been concealing a firearm. All of these things are objective facts which the officer considered and which the officer was entitled to consider, which the court heard. The court just, the credibility of both the defendant and the officer credited the testimony of the officer, and we believe based on all of those facts that the court made the right call, that there was reasonable suspicion for the stop, and that the court properly denied the motion to suppress. Okay. Thank you. Thank you, sir. Mr. Martin. I would like to just, looking at the point in time when the officer made the decision to frisk my client, was actually before my client was removed from the vehicle. So I'm urging this court... Why do you say that? Because he testified to that. What did he say? He said, I decided... Actually, he went to the back of the vehicle with the other officer, and they discussed what they wanted to do, and they discussed, and they decided at the rear of the vehicle, before they started pulling anyone out, that they were going to bring people out, search them, and then try and talk to them individually. So I'm urging... This is after the passenger had failed to comply with the officer's command, and had protected his right thigh. That's correct, Your Honor. But it was... At that point, the officer arguably could have feared for the presence of a gun in his pocket. I must say that if you just, if you're patrolling at 3.30 in the morning in a high school, you come across four fellows screeching around in cars, and one finally comes in and puts his arm up on... He's told to put both arms on the back of the seat, and he keeps one arm down, despite repeated commands to get it up there. I think the only conclusion almost every officer would say, he's got a gun down there. At least that's a reasonable suspicion. And of course, under Wilson, he can ask him to get out of the car, and the one intrusion, and the additional intrusion of pat down, is a fairly minor intrusion that we balance against the risk based on objective evidence. Yes, Your Honor. What I'm urging is to not take into consideration any of the objective facts after the point in time that the two officers spoke with each other, and decided to pull everyone out and frisk them. So we're looking at just the objective facts leading up to that point in time. And I think that really thins it out. It really narrows that time. Narrows it down a lot. Very much. Thank you very much. Thank you. We'll come down and greet counsel, and then proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Clyde H. Hamilton